IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:16CR00249-001 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES EDWARD BUTLER, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE
PRESENTENCE INVESTIGATION REPORT**

Now comes the United States of America, by and through its counsel, David A. Sierleja, Acting United States Attorney, Michael J. Freeman, Assistant United States Attorney, Dana A. Mulhauser, Trial Attorney for the Civil Rights Division, Robert Miller, Special Assistant United States Attorney, and respectfully moves this Court to find sentencing enhancements for dangerous weapon and serious bodily injury as noted in the Presentence Investigation Report.

**I.  Factual Statement**

On May 18, 2016, Charles Butler, Jr. and Robert Paschalis willfully caused bodily injury to A.W., who is African American, because of his actual or perceived race, color, or national origin. (PSR, Dkt. No. 27, ¶ 6-19.) Specifically, on the aforementioned date, A.W., who is

African-American, was loading items into the back of his pickup truck in front of his residence at Lagrange and N. Michigan Streets, in the city of Toledo, Ohio. (*Id.* ¶ 7.) Butler and Paschalis drove past A.W. on the side of the road in a black GMC pickup. (*Id.*) Butler and Paschalis had no prior contact with A.W. (*Id.*)

Within minutes after the initial pass, Butler and Paschalis circled back outside of A.W.'s residence. (*Id.* ¶ 8.) Butler and Paschalis immediately exited their vehicle and Butler called A.W. a "nigger," and Paschalis called him a "faggot." (*Id.*) They both crossed the street and started a physical confrontation with A.W. Butler grabbed a broom from the back of A.W.'s pickup truck and struck A.W. with the broom, knocking A.W. to the ground. (*Id.* ¶ 8, 17.) During the altercation, Paschalis joined Butler and they repeatedly punched and kicked A.W. (*Id.*) The assault lasted for several minutes until two off-duty Ohio Public Safety Officers broke it up. (*Id.* ¶ 8.)

While detained at the scene, Paschalis told law enforcement officers that the fight was because Butler and he were racist and, unlike Butler, he had not "earned" his Swastika tattoo yet. (*Id.* ¶ 9.)

Butler, Paschalis, and A.W. all went to the hospital. (*Id.* ¶ 10.) A medical exam of A.W. found he suffered from "extensive periorbital emphysema" on the right eye and visible injuries to his face. (*Id.* ¶ 22.) A.W. had "severe disruption of the inferior aspect of the lamina papyracea with extrusion of the extraconal fat into the ethmoid air cells with abundant hemorrhage into the ethmoid air cells." (*Id.*) A.W. reported that he still takes pain medication for his recurring headaches from the assault. (PSR, Dkt. No. 27, ¶ 23.)

Butler is a self-identified white supremacist. (PSR, Dkt. No. 25, ¶ 11.) He has numerous tattoos indicative of white supremacy, including the German War Eagle, a portrait of Adolph Hitler, a Swastika and a Confederate flag. (*Id.*)

Butler and Paschalis were Facebook "friends," allowing Paschalis access to Butler's Facebook profile. (*Id.* ¶ 12.) Butler's Facebook is filled with photographs and posts of Adolph Hitler, burning crosses, Nazi war eagles, Aryan Nationalist Alliance logos, Confederate flags, the Ku Klux Klan, references to President Obama as a monkey, and various white pride symbols. (*Id.*)

Butler made two Facebook posts related to this altercation. (*Id.* ¶ 13-16.) On May 18, 2016, the same day as the assault of A.W., Butler posted a photograph showing his head with bandages on a bloody wound with the caption,

> Nigger running his mouth but like a bitch he grab a bat… Im in the E.R. so his the nigger. His got broken ribs. I'm fine….just a lil pissed cuz the cops showed up while me and my brother was kicking his ass.

(*Id.* ¶ 14.)

The next day, Butler posted a photograph showing his head laceration (without bandages) and with the caption,

> I just took this pic a sec ago…Hell as u can c I'm fine….More scores to add to my war book of the White Man. MLLH&R[1] 14/88.[2] I'm a warrior and fight till the death.. DEATH B4 DISHONOR". All in the name of the White Race. My battle wounds will heal but I've lived to fight another day.

(*Id.* ¶ 16.)

---

[1] This is an acronym for Much Love, Loyalty, Honor & Respect.

[2] 14/88 is a term recognized by white supremacists. Fourteen represents the 14 words written by David Lane, "We must secure the existence of our people and a future for white children." Eighty-eight is a reference to the eighth letter in the alphabet, H, to represent HH or "Hail Hitler."

3

## II. Procedural History

On July 29, 2016, U.S. Magistrate Judge James Knepp, II, authorized a federal criminal complaint and arrest warrant charging Charles E. Butler, Jr. and Robert A. Paschalis, with violating the federal hate crime statute, Title 18, United States Code, Section 249(a). (Complaint, Dkt. No. 1.) On August 3, 2016, a federal grand jury returned an indictment mirroring the criminal complaint charging both defendants for hate crime acts. (Indictment, Dkt. No. 3.)

On November 9, 2016, Butler pleaded guilty as charged with no plea agreement. (*See* Minutes of proceedings, Dkt. 11/09/2016.) On November 22, 2016, Paschalis pleaded guilty pursuant to a plea agreement, conceding that the dangerous weapon and serious bodily injury enhancements apply. (*See* Minutes of proceedings, Dkt. 11/22/2016.)

On March 23, 2017, the U.S. Probation Department filed its final presentence report ("PSR") for Butler. (PSR, Dkt. No. 27.) The report concluded that both the dangerous weapon and serious bodily injury sentencing enhancement applied. (PSR, Dkt. No. 27, PSR, ¶ 33.) Butler objected to both of those enhancements. (Addendum to PSR, Dkt. No. 27.)

## III. A broom is a "dangerous weapon" when used to strike a victim in the head causing him to fall to the ground

The applicable Sentencing Guideline for this hate crime is U.S.S.G. § 2A2.2. This Guideline provides for a four-level enhancement to the base offense level if a "dangerous weapon was otherwise used" during the offense of conviction. U.S.S.G. § 2A2.2(b)(2)(B). The application notes define a dangerous weapon "as having the same meaning given to the term in § 1B1.1, Application Note 1, and includes any instrument that is not ordinarily used as a weapon (e.g. a car, a chair, or an ice pick) if such instrument is involved in the offense with the intent to commit bodily injury." U.S.S.G. § 2A2.2, Application Note 1. Section 1B1.1 states that a

dangerous weapon is "an instrument *capable* of inflicting death or serious bodily injury . . . ." U.S.S.G. § 1B1.1, Application Note 1(D) (emphasis added).

"Serious bodily injury" is "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, Application Note 1(L) (*Cf.* U.S.S.G. § 1B1.1, Application Note 1(B) (stating "bodily injury" is "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought.")).

There is no dispute that Defendant used the broom with the intent to commit bodily injury. Therefore, the ultimate inquiry is whether a reasonable individual would believe that the object was capable of inflicting serious bodily injury. *U.S. v. Tolbert*, 668 F.3d 798, 801 (6th Cir. 2012). In the proper circumstances, "almost anything can count as a dangerous weapon, including walking sticks, leather straps, rakes, tennis shoes, rubber boots, dogs, rings, concrete curbs, clothes irons, and stink bombs" so long as it is capable of inflicting the required harm. *Id.* at 802-03 *(citing U.S. v. Serrata*, 425 F.3d 886, 910 (10th Cir. 2005); *U.S. v. Callahan*, 801 F.3d 606, 628 (6th Cir. 2015).

The Sixth Circuit interpreted the enhancement for dangerous weapon in *Tolbert*, 668 F.3d 798, 800 (6th Cir. 2012), upholding a district court's determination that a plastic water pitcher was a dangerous weapon under the Guidelines. In that case, the defendant grabbed a plastic water pitcher from counsel's table and struck a deputy United States Marshal in the head. *Id.* at 799. It was estimated that the water pitcher was about ten inches in height and half of a pound to a pound in weight. *Id.* at 800. The deputy marshal did not sustain any serious injury nor did he seek medical attention. *Id.* at 799. The Sixth Circuit approved the district court's conclusion that the plastic water pitcher was a dangerous weapon stating:

5

> The district court correctly applied this kind of functional analysis, looking at the circumstances in which the water pitcher was used, when it ruled on [defendant's] objection. Contrary to [defendant's] assertions, it was not mere conjecture for the district court to conclude, based on evidence of the characteristics of the water pitcher—including its hardness, size, shape, and weight, the circumstances in which it was used (to strike someone in the head), and common experience, that this object was capable of inflicting serious bodily harm, even though no such harm actually resulted. The district court did not clearly err in concluding that the water pitcher constituted a dangerous weapon under these circumstances and that [defendant's] use of the pitcher to strike [the deputy marshal] in the head provided sufficient evidence of his intent to inflict bodily injury. The application of the four-level enhancement for use of a dangerous weapon was therefore justified.

*Id.* at 803.

In this case, the broom was of sufficient size and weight to cause a grown man to fall to the ground when struck with it. While the Defendant describes it as a "lightweight 'Dollar Store' angle broom" in his objections, the question here is not the weight of the broom but its ability to do harm. We know by common sense that a broom, like the water pitcher in *Tolbert*, can do harm. We also know that the broom can do harm because it did do harm to A.W.

Even assuming *arguendo* that Defendant's description of the broom is true, that does not preclude it from being a dangerous weapon for guideline purposes. The real determination is whether the broom was capable of inflicting serious bodily injury. Like the plastic water pitcher in *Tolbert*, the size, shape, and weight (even assuming it is plastic) of the broom, in conjunction with Butler swinging it striking A.W. in the head causing him to fall to the ground, it is reasonable to conclude that the object was capable of inflicting serious bodily injury.

Accordingly, the Court should concur with the PSR recommendation and find the four-level enhancement appropriate.

### IV. A.W. suffered "serious bodily injury" from the assault due to his brief hospital stay and continuing symptoms

In addition to an enhancement for use of a dangerous weapon, U.S.S.G. § 2A2.2 provides for a five-level enhancement if the victim sustained "serious bodily injury" from the assault. As mentioned above, "serious bodily injury" is defined for Guideline purposes as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, Application Note 1(L). It is important to note that the definition is in the disjunctive, meaning the court need only find that the victim experienced "extreme physical pain," or "protracted impairment," or "medical intervention" for the enhancement to apply. *U.S. v. Pleasant*, 12 F. App'x 262, 269 (6th Cir. 2001).

The Sixth Circuit held that the "serious bodily injury" enhancement applies to similar type of injuries as here in *U.S. v. Callahan*, 801 F.3d 606, 627 (6th Cir. 2015) and *U.S. v. Clay*, 90 F.App'x 931, 933 (6th Cir. 2004). In *Callahan*, the victim on separate occasions was beaten with a wooden fence post; punched in the face; and kicked in face, knocking a tooth loose. *Id.* The victim did not seek nor need any medical intervention. *Id.* Nonetheless, the Sixth Circuit concluded that "*each* of these events caused [the victim] extreme physical pain and therefore the district court properly applied the [serious bodily injury] enhancement." *Id.* (emphasis added).

Likewise, in *Clay*, the defendant struck the victim in the head with a pistol causing the victim to fall to the ground, briefly lose consciousness, and bleed. *Clay*, 90 F. App'x at 933. The victim went to the hospital, received stitches, and immediately thereafter was released. *Id.* The court concluded that even the "temporar[y] impair[ment]" of his brain during the assault qualified as "serious bodily injury," and separately that the stitches were sufficient medical intervention for the enhancement to apply. *Id.*

Here, A.W. suffered extreme pain and protracted impairment of a bodily organ or mental faculty justifying the five-level enhancement. Defendant minimizes A.W.'s injury by referring to it as simply a "black eye," but such characterization ignores the facts and medical personnel's professional opinions.

First, Butler and Paschalis double-teamed A.W., used a weapon, forced A.W. to the ground, and repeatedly struck A.W. in the face and head. During the assault, A.W. lost sight out of his eye and had "blood everywhere." The beating lasted for several minutes and was so intense that A.W. recalled having his "life flash before [his] eyes." Like the victim in *Callahan*, this extreme pain alone is sufficient to support a finding of serious bodily injury due to the nature, duration, and types of blows inflicted upon A.W.

Second, A.W.'s protracted impairment of his eye is sufficient to support the serious bodily injury enhancement. The words of the medical professionals are enlightening. The doctor found "*extensive* periorbital emphysema" on his right eye with "*severe* disruption of the inferior aspect of the lamina papyracea . . . with *abundant* hemorrhage into the ethmoid air cells. . . ." (emphasis added). Looking at A.W.'s right eye from his time in the hospital and the following day, clearly shows it is much more than a "black eye" and provides insight into the level of injury A.W. suffered. (*See* Ex. 1, Hospital Photograph; and Ex. 2, Following Day photograph).

Finally, and perhaps the best indication A.W. suffered "serious bodily injury," is the fact A.W. continues to suffer from recurring headaches from the assault several months removed from the incident. His extreme pain and, protracted impairment of his right eye and mental faculty are sufficient justifications for the five-level enhancement.

Wherefore, the government respectfully request the Court adopt the findings from the PSR and find that both "dangerous weapon" and "serious bodily injury" enhancements apply.

Respectfully submitted,

DAVID A. SIERLEJA
Acting United States Attorney

By: /s/ Michael J. Freeman
Michael J. Freeman (OH: 0086797)
Assistant United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604
(419) 241-0724
(419) 259-6360 (facsimile)
Michael.Freeman2@usdoj.gov

/s/ Dana A. Mulhauser
Dana A. Mulhauser
Trial Attorney
Civil Rights Division
U.S. Department of Justice

/s/ Robert Miller
Robert Miller
Special Assistant United States Attorney
Northern District of Ohio

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March 2017 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Michael J. Freeman
Michael J. Freeman
Assistant U.S. Attorney

**Exhibit 1**



**Exhibit 2**

